UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL TATE (R-12529), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 997 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| MICHAEL F. SHEAHAN, Sheriff of Cook ) | |
| County, Individually and as agent and ) | |
| employee of the County of Cook, and ) | |
| RONALD DEROSA, ) | |
| ) | |
| Defendants. ) | |

## ORDER

The Court grants Defendant Sheahan's motion to dismiss the fourth amended complaint [52]. The Court dismisses Tate's claims against Sheahan without prejudice. See Statement.

## STATEMENT

Carl Tate, a transgender prisoner confined at Shawnee Correctional Center, brings this suit against Michael F. Sheahan, the former Sheriff of Cook County, and Ron DeRosa, a Cook County Jail chaplain. In her fourth amended complaint, Tate alleges that, while at the Cook County Jail from 1998 to 2002, DeRosa sexually abused her. She also brings claims against Sheahan for failing to prevent DeRosa's sexual assaults and abuse. Sheahan moves to dismiss Tate's claims against him.[1]

Tate's fourth amended complaint alleges that she first met with DeRosa in April 1998 after learning that her sister had died. During that visit, DeRosa allegedly "rubbed Tate's arm in a sexual manner and began fondling himself." Doc. 46 at 3. After that incident, DeRosa called or brought Tate to his office three to four times a month. They performed oral sex on each other, and, in some instances, DeRosa invited other inmates to engage in these sexual activities. DeRosa explained that the Bible encouraged their behavior, gave Tate gifts, referred to Tate as a blessing, and stated that Tate's sexually serving DeRosa also served God. After Tate entered the Illinois Department of Corrections in 2002, DeRosa visited and called her, encouraging her to have sex with others "to do God's work." *Id.* at 4. Tate contends that, since her time at Cook County Jail, she has been suicidal and suffered from post-traumatic stress disorder, anxiety disorder, depression, and gender dysphoria. Tate allegedly repressed the sexual abuse she experienced at the hands of DeRosa until December 2016, when she realized the injury during therapy sessions. She then sent correspondence to the Cook County Sheriff's Department

---

[1] DeRosa has not filed an appearance in this case. The Court therefore does not discuss the viability of Tate's claims against DeRosa in this Order.

complaining of the sexual abuse, but she received no response. Tate filed the present case in February 2017.

Sheahan first argues that the statute of limitations bars Tate's § 1983 claims. The statute of limitations is an affirmative defense that Tate need not anticipate in her complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint).

Section 1983 does not itself have a statute of limitations but instead uses the limitations period for similar claims in the state where the claims arose. "In Illinois, the statute of limitations for § 1983 claims is two years." *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) (citing 735 Ill. Comp. Stat. 5/13-202). Although state law sets the length of the limitations period for a § 1983 claim, federal law governs when the claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). "[T]he standard rule [is] that [accrual occurs] when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief." *Id.* (third alteration in original) (citations omitted). This occurs "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted). After identifying the injury, the Court "must determine the date on which the plaintiff could have sued for that injury. That date should coincide with the date the plaintiff knows or should have known that his rights were violated." *Id.* (citation omitted) (internal quotation marks omitted).

The Court previously addressed the statute of limitations in screening Tate's amended complaint. Doc. 12 at 4–5. In that Order, the Court considered the accrual of traumatic sexual abuse claims in light of *Clay v. Kuhl*, 727 N.E.2d 217, 220–23, 189 Ill. 2d 603, 224 Ill. Dec. 918 (2000), and *Doe v. Society of the Missionaries of the Sacred Heart*, No. 11 C 2518, 2012 WL 5499430, at *5 (N.D. Ill. Nov. 13, 2012).[2] According to the Illinois Supreme Court in *Clay*, where the allegations of a complaint clearly showed that the plaintiff "was always aware of the misconduct charged" and there was no "assertion that the plaintiff repressed memories of the abuse, . . . the plaintiff's action must be considered untimely under the discovery rule." *Clay*, 727 N.E.2d at 221–22. In *Clay*, the complaint demonstrated that the plaintiff knew she was the victim of sexual misconduct and that she suffered some injury. *Id.* Though she alleged "that her injuries were latent to some extent and did not fully manifest themselves until years after the abuse occurred . . . . [t]here is no requirement that a plaintiff must know the full extent of his or her injuries before" she brings suit. *Id.* at 222; *see also Softcheck v. Imesch*, 855 N.E.2d 941, 948, 367 Ill. App. 3d 148, 305 Ill. Dec. 425 (2006) (holding, in reliance on *Clay*, that though the plaintiffs alleged they did not understand the sexual abuse was wrong, absent an allegation "that defendants or anyone tried to convince the plaintiffs, after they reached their majority, that sex

---

[2] The Court acknowledges that both of these cases address Illinois, and not federal, accrual rules, but the Court finds them relevant to its analysis under federal law, where the federal rules provide for accrual when the plaintiff knows or should have known of her injury, the same standard applied in *Clay* and *Doe*.

between a priest and a child is not wrongful but, rather, beneficial to the child's growth," the discovery rule did not apply). In *Doe*, another member of this Court held that where a plaintiff alleged "he did not realize the abuse was wrongful until [a] triggering event in 2006 and, just as importantly, that the injuries did not manifest themselves until that later time," the discovery rule applied and the suit was timely. *Doe*, 2012 WL 5499430, at *7.

The Court already concluded it could not dismiss the case as untimely based on Tate's allegations that she had repressed the sexual abuse until 2016, when a mental health professional explained to her the injury DeRosa caused and that DeRosa explained to her that the Bible encouraged the sexual activity. Doc. 12 at 4–5; *see Chafin v. W.V. Div. of Juvenile Servs.*, No. 2:16-cv-05127, 2018 WL 1121556, at *5–6 (S.D. W. Va. Jan. 25, 2018) (finding it inappropriate to resolve issue of whether delayed discovery rule based on repressed memory applied to sex abuse claims on motion to dismiss). Nothing in Tate's fourth amended complaint requires the Court to reconsider this conclusion, nor does Sheahan make any compelling argument for such a departure. In one case, the court concluded that "[n]o reasonable factfinder could believe that a boy molested repeatedly between his thirteenth and sixteenth birthdays would not have known what was occurring," causing his federal claims to accrue at the time of the abuse. *Ernstes v. Warner*, 860 F. Supp. 1338, 1341 (S.D. Ind. 1994). But the Court refuses to come to the same conclusion at the motion to dismiss stage here, particularly in light of Tate's allegations that DeRosa indoctrinated Tate to believe the sexual activity served God, an allegation not present in *Ernstes*. *See Doe*, 2012 WL 5499430 (noting that plaintiff should not have recognized that the defendant priest's actions amounted to misconduct given plaintiff's age and defendant's "assurances of the 'special nature of their friendship'"); *Softcheck*, 855 N.E.2d at 948 (in finding discovery rule did not apply, noting that the complaints did not include any allegation "that defendants or anyone tried to convince the plaintiffs, after they reached their majority, that sex between a priest and a child is not wrongful but, rather, beneficial to the child's growth"). Although a more developed record may show that Tate knew of the wrongfulness of DeRosa's actions and that they caused her some injury years before this suit, the fourth amended complaint's allegations do not clearly demonstrate that the statute of limitations bars her claims.[3] *See United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir.2004) (noting that dismissing a case as untimely based on the allegations of a complaint is "irregular").

But the Court finds that Tate has nonetheless failed to allege a viable claim against Sheahan. Although Tate's fourth amended complaint does not clearly set forth the claims against Sheahan, based on her response to the motion to dismiss, the Court construes Tate's federal claims as ones for failure to protect Tate from sexual abuse against Sheahan in both his individual and official capacities.[4] With respect to the individual capacity claim, Tate has not adequately alleged Sheahan's personal involvement in the alleged constitutional violation. Section 1983 creates a cause of action based on personal liability and predicated upon fault, meaning that "to be liable under § 1983, the individual defendant must have caused or

---

[3] The Court also does not address the potential applicability of any tolling provisions because neither party raises such an argument.

[4] As such, the Court does not address whether Tate has stated any individual claims for violation of the right to privacy or right to due process (except to the extent her failure to protect claim invokes the Fourteenth Amendment).

3

participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted). Personal liability exists where the conduct occurred at the defendant's direction or with his knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). For a supervisor like Sheahan, this means that he must have known "about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011). Tate includes no allegations to plausibly suggest that Sheahan, as the supervisory official of the Cook County Jail, knew of DeRosa's actions and consented to them.

As for the official capacity claim, Tate may base *Monell* liability on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted). To adequately allege a *Monell* widespread practice claim, Tate must "plead[ ] factual content that allows the Court to draw the reasonable inference that the [Sheriff] maintained a policy, custom or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted). Tate appears to pursue a claim under the second and potentially the third prongs. But the allegations do not suggest that the sexual abuse Tate suffered arose from policies or practices instituted by Sheahan or that the Jail had any knowledge of DeRosa's actions so that its allowance of chaplain visits could make it liable under *Monell*. *See Harris v. Wexford Health Sources, Inc.*, No. 15-cv-10936, 2017 WL 4467480, at *3–4 (N.D. Ill. Oct. 6, 2017) (dismissing *Monell* claim where complaint did not adequately provide facts to support how plaintiff's injuries were caused by defendant's alleged policies or practices). *Paz v. Weir*, which Tate cites for support, does not help her cause at the pleading stage because the *Paz* court addressed whether a *Monell* claim survived summary judgment in light of the detailed facts concerning the county's knowledge of potential abuse and ignorance of policies concerning chaplain visits. *See* 137 F. Supp. 2d 782, 812–17 (S.D. Tex. 2001) (at summary judgment, finding a dispute of fact as to whether plaintiff could establish a *Monell* claim for violation of her right to bodily integrity). The facts presented in *Paz* stand in stark contrast to the sparse allegations in the fourth amended complaint, which do not suggest any policy or practice that could be tied to Tate's alleged injuries. Therefore, the Court dismisses Tate's § 1983 claims against Sheahan in both his official and individual capacities.

Finally, to the extent Tate pursues an intentional infliction of emotional distress ("IIED") claim against Sheahan, the fourth amended complaint does not include any allegations to support such a claim. To recover for IIED, Tate must allege that (1) Sheahan's conduct was extreme and outrageous; (2) Sheahan either intended to inflict severe emotional distress or knew of the high probability that his conduct would do so; and (3) Sheahan's conduct actually caused severe emotional distress. *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005). Nothing in the fourth amended complaint suggests that Sheahan had knowledge of DeRosa's actions and failed to prevent the resulting harm to Tate, meaning that Tate has not alleged that Sheahan intended to harm Tate or knew any of his actions would do so. *See Woods v. Maryville*

4

*Academy*, No. 17 C 8273, 2018 WL 6045219, at *9 (N.D. Ill. Nov. 19, 2018) (dismissing IIED claim against the board of directors, finding no allegations that the board members knew of the alleged sexual abuse perpetrated by another child placed at the defendant housing facility by DCFS).  As a result, Tate also cannot proceed on an IIED claim against Sheahan.  Because the Court finds that Tate fails to state a claim against Sheahan but could potentially cure the pleading defects, the Court dismisses the claims against Sheahan without prejudice and grants Tate one final opportunity to allege viable claims against him.


Date:  May 24, 2019                                                              /s/  Sara L. Ellis